UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

INVESCO INSTITUTIONAL (N.A.), INC.

    Plaintiff,

-against-

DEUTSCHE INVESTMENT
MANAGEMENT AMERICAS, INC.,

    Defendant.

CIVIL ACTION NO. 07 Civ. 2622 (AKH) (MHD)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

**BAKER & HOSTETLER LLP**
John Siegal (JS-1036)
Ona T. Wang (OW-5462)
Essence Liburd (admission pending)
666 Fifth Avenue
New York, New York 10103
(212) 589-4200
(212) 589-4201 (fax)

April 24, 2007

*Attorneys for Defendant Deutsche
Investment Management Americas, Inc.*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....................................................................................... 1
FACTUAL BACKGROUND ........................................................................................... 5
ARGUMENT .................................................................................................................... 6
POINT I:   THE CHALLENGED STATEMENTS IN THE PRESS RELEASES WERE TRUE ............................................................................................................... 7
POINT II:   THE PRESS RELEASES WERE NOT MATERIALLY MISLEADING ................. 8
POINT III:   INVESCO'S REMAINING STATE LAW CLAIMS SHOULD ALSO BE DISMISSED ............................................................................................ 13
CONCLUSION ............................................................................................................... 14

## TABLE OF AUTHORITIES

**Cases**

*BIEC Int'l Inc., v Global Steel Svcs., Ltd.*, 791 F. Supp. 489 (E.D.Pa. 1992) .............................. 10

*Cytyc Corp. v. Neuromedical Sys., Inc.* 12 F. Supp.2d 296 (S.D.N.Y. 1998) ................................ 7

*Dial A Car, Inc. v. Transportation, Inc.*, 82 F.3d 484 (D.C. Cir. 1996) ................................. 12, 14

*Galerie Gmurzynska v. Hutton*, 257 F. Supp.2d 621 (S.D.N.Y. 2003) ........................................ 7, 8

*Global Disc. Travel Serv. v. Trans World Airlines, Inc.*, 960 F. Supp. 701 (S.D.N.Y. 1997). 4, 11, 12, 13, 14

*Groden v. Random House Inc.*, No. 94 Civ. 1074, 1994 U.S. Dist. LEXIS 11794 (S.D.N.Y., Aug. 23, 1994) ......................................................................................................................... 9

*Kidder, Peabody & Co., Inc. v. Maxus Energy Corp.*, 925 F.2d 556 (2d Cir. 1991) ................... 15

*National Ass'n of Pharm. Mfrs. v. Ayerst Lab.*, 850 F.2d 904, (2d Cir. 1988) ............................... 9

*National Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841 (2d Cir. 1997) .................................... 3

*Randa Corp. v Mulberry Thai Silk*, No. 00 Civ. 4061, 2000 U.S. Dist. LEXIS 17014 (S.D.N.Y. 2000) ............................................................................................................. 7, 8, 10, 12, 13

*Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222 (3d Cir. 1990) ........................... 14

*Truck Components, Inc. v. K-H Corp.*, 776 F. Supp. 405 (N.D. Ill. 1991) ..................... 4, 10, 11, 14

**Statutes**

Lanham Act, 15 U.S.C. § 1125(a)(1)(B) ........................................................................................ 6

**Rules**

28 U.S.C. § 1367(c)(4) ................................................................................................................. 13

Fed. R. Civ. P. 12(b)(6) .................................................................................................................. 7

## PRELIMINARY STATEMENT

Plaintiff INVESCO Institutional (N.A.) Inc.'s ("INVESCO") presence in federal court is hanging by a single Lanham Act claim hastily added to its previously-filed state court unfair competition claims when, for tactical reasons, plaintiff decided to withdraw its state court complaint and to refile in this Court. The Lanham Act claim challenges two factually accurate press releases issued by defendant Deutsche Investment Management Americas, Inc.'s Asset Management division ("DeAM"). Because DeAM's press releases are literally true and are not materially misleading, the Lanham Act claim must be dismissed as a matter of law. With that dismissal, INVESCO's entire basis for federal subject matter jurisdiction will fall because the balance of its claims are common law claims under state law and there is no diversity of citizenship between these parties.

This action arises from the decisions of certain senior fixed-income investment professionals to give notice of their intentions to resign from employment with INVESCO and join DeAM. Four of the senior investment managers who resigned tendered notice of their intent to resign in accordance with notice provisions in their INVESCO agreements and DeAM has not participated in any violation of those notice provisions. Nevertheless, INVESCO has sued DeAM asserting various state law unfair competition claims. Other INVESCO staff who do not have notice provisions have resigned and begun working for DeAM, but those hires do not appear from the complaint to form the basis for any of INVESCO's claims against DeAM.

The press releases that form the basis of INVESCO's Lanham Act claim simply announced that the investment managers will join DeAM. The press releases are factual, precise, and true. They state, in pertinent part:

1

> Deutsche Bank's Asset Management division (DeAM) today announced a major expansion of its Institutional Fixed Income Investment team. A team of four senior investment managers and 12 additional senior staff will join DeAM from INVESCO, including the chief Investment Officer for INVESCO Worldwide Fixed Income group, Stephen M. Johnson, who oversees $93.7b in assets under management. Also joining will be Kenneth R. Bowling, James Guenther, and Randy G. Paas. The group will report to Bart Grenier, Managing Director and Global Head of Specialty Fixed Income for DeAM . . .

\* \* \*

> Mark Dowding will join Deutsche Bank's Asset Management division (DeAM) from INVESCO as a Managing Director in the Global Institutional Fixed Income team. Based in London, Dowding will report to Bart Grenier, Managing Director and Global Head of Specialty Fixed Income. Dowding is part of a group of five senior investment managers and 11 additional senior staff who will join DeAM from INVESCO . . .

The press releases did not contain a start date for the investment managers at DeAM. To do so would have been inaccurate because defendant does not yet know when the managers will be able to begin working for DeAM.

INVESCO's Lanham Act claim must be dismissed as a matter of law for at least two fundamental reasons.

*First,* the press releases are not false; indeed, they are 100 percent true and accurate. As such, they cannot form the basis for a Lanham Act claim. INVESCO strains in its complaint to parse certain specific words of the press releases in a manner that it claims shows that the releases are false, but its textual analysis defies the plain meaning of the words. Specifically, INVESCO argues that the use of the word "today" in the press release's statement that DeAM "today announced a major expansion of its Institutional Fixed Income Investment

2

team" was inaccurate. This language, however, is commonly employed in press releases to indicate the date of the announcement in the body of the news announcement so it can be contemporaneously reported by the business press. Likewise, the statement that "[t]his is a significant expansion to our Global and U.S. Institutional Fixed Income Investment team" is literally true. Indeed, former INVESCO personnel who are not subject to notice periods have already begun working for DeAM. Thus, the press releases are literally true. (*See* Point I *below*.)

*Second*, INVESCO's assertion that the language of the press releases is materially misleading fares no better. To support its position in this regard, INVESCO unconvincingly argues that DeAM omitted discussion of the contractual notice periods and thus the fact that the four senior managers *might* not be able to join for a notice period following the dates of their resignations. This omission does not create Lanham Act liability, and federal courts should not be put in the position of having to review routine corporate press releases just because a party to a state court litigation asserts that an omission from a press release regarding a contractual law dispute rises to the level of a Lanham Act violation and converts the pending litigation into a federal question.

To state a Lanham Act claim based on the omission of information (here, the possible dispute over the enforceability of the notice periods), the plaintiff must plead that the alleged omission goes to an essential characteristic of the product or service. *National Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 855 (2d Cir. 1997). Applying the Lanham Act here because DeAM's press release did not discuss the notice period provisions that were likely to become a subject of litigation would be contrary both to the legislative intent of the Lanham Act and prior case law. Express liability for material omissions was stricken from the Lanham

3

Act in the Congressional drafting process. This and other federal district courts have dismissed Lanham Act claims on Rule 12(b)(6) motions when the claim rests solely on omissions regarding matters that are in dispute. *See Global Disc. Travel Serv. v. Trans World Airlines, Inc.*, 960 F. Supp. 701, 706-707 (J. Sotomayor) (S.D.N.Y. 1997) ("[i]n the absence of a clear and unambiguous determination of the contractual rights and liabilities of the parties . . . defendant's statements simply expressed an opinion—not a false statement"); *see also Truck Components, Inc. v. K-H Corp.*, 776 F. Supp. 405, 410 (N.D. Ill. 1991) (dismissing Lanham Act claim based on defendant's press release, where the press release announced defendant's new business but omitted certain legal restrictions arising out of a covenant not to compete.)

The *Truck Components* decision is especially compelling authority for dismissal here. The plaintiff in *Truck Components* brought a Lanham Act claim against a competitor who had issued a purportedly false press release. The plaintiff claimed that the press release was misleading because some customers could read it to mean that the defendant was violating the terms of a non-compete with plaintiff. In dismissing the claim, the court refused to find Lanham Act liability where the purported misstatement was not a misrepresentation about either party's product, but a dispute regarding the terms of an agreement between the parties. Likewise, here INVESCO's complaint regarding DeAM's press releases is not that DeAM misrepresented its fixed-income investment advisory services, but that DeAM omitted any reference to the contract dispute regarding the notice period between INVESCO and the managers DeAM has hired from INVESCO. This omission simply does not create a Lanham Act issue under *Truck Components* or any other decisional authority of which we are aware. (*See* Point II *below*).

For these reasons, plaintiff's Lanham Act claim must be dismissed. Once that occurs, INVESCO's entire complaint should be dismissed because, after dismissal of the

4

Lanham Act claim, INVESCO will have no basis for federal subject matter jurisdiction. (*See* Point III *below*.)

## FACTUAL BACKGROUND [1]

The press releases on which INVESCO bases its Lanham Act claim state, in pertinent part:

> Deutsche Bank's Asset Management division (DeAM) today announced a major expansion of its Institutional Fixed Income Investment team. A team of four senior investment managers and 12 additional senior staff will join DeAM from INVESCO, including the chief Investment Officer for INVESCO Worldwide Fixed Income group, Stephen M. Johnson, who oversees $93.7b in assets under management. Also joining will be Kenneth R. Bowling, James Guenther, and Randy G. Paas. The group will report to Bart Grenier, Managing Director and Global Head of Specialty Fixed Income for DeAM . . .

(Compl., Exh. G).

\* \* \*

> Mark Dowding will join Deutsche Bank's Asset Management division (DeAM) from INVESCO as a Managing Director in the Global Institutional Fixed Income team. Based in London, Dowding will report to Bart Grenier, Managing Director and Global Head of Specialty Fixed Income. Dowding is part of a group of five senior investment managers and 11 additional senior staff who will join DeAM from INVESCO . . .

(Compl. Exh. H.)

Plaintiff filed this action, including the Lanham Act claim set forth in Count Five, only after it filed and then unilaterally withdrew a complaint in Supreme Court, New York County, in which it asserted the identical claims asserted in this action

---

[1] The facts on which this memorandum relies are set forth in plaintiff's complaint, dated and filed March 29, 2007, and the exhibits annexed thereto (the "Complaint" or "Compl.") and in the accompanying Declaration Of John Siegal In Support Of Defendant's Motion To Dismiss, executed on April 24, 2007 (the "Siegal Decl.").

5

but for the Lanham Act count.[2]

To date, INVESCO has filed three separate actions in response to the investment managers notifying INVESCO of their intention to leave INVESCO and to join DeAM: the New York state court action against DeAM (filed on March 26 and withdrawn on March 29) (Siegal Decl., Exh. 1), an action filed in the Western District of Kentucky against the individual investment managers with notice provisions in their INVESCO agreements (filed on March 27 and amended on March 28) (Siegal Decl., Exh. 2), and this action against DeAM, filed on March 29. DeAM is not a party to the Kentucky action, where a preliminary injunction hearing is scheduled for June 7th. (Siegal Decl. ¶ 4).

## ARGUMENT

The required elements for pleading and proving a violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), are: (1) defendants made a false or misleading representation regarding the nature, characteristics or quality of plaintiff's services; (2) the representations were used in commerce; (3) the representations were made in the context of commercial advertising or promotion; and (4) defendants' actions made plaintiff believe it would be damaged by the representations. *Galerie Gmurzynska v. Hutton*, 257 F. Supp.2d 621, 629 (J. Berman) (S.D.N.Y. 2003); *see also Randa Corp. v. Mulberry Thai Silk*, No. 00 Civ. 4061, 2000 U.S. Dist. LEXIS 17014, at *10 (J. Preska) (S.D.N.Y. Nov. 27, 2000) (dismissing Lanham Act claim because plaintiff made only conclusory allegations that false statements were made). INVESCO has

---

[2] A copy of the state court complaint is annexed as Exhibit 1 to the Siegal Decl. It has been redacted of material that DeAM contends is covered by DeAM's attorney/client privilege and that was inadvertently forwarded to INVESCO. INVESCO has moved the state court with DeAM's consent to seal the redacted portions of the state court complaint.

failed to meet even this elementary burden in filing this action, which we respectfully submit should be dismissed at the outset on this dismissal motion under Rule12(b)(6), Fed. R. Civ. P.: "On a Rule 12(b)(6) motion, the Court may determine as a matter of law whether the alleged statements are in fact actionable." *See Cytyc Corp. v. Neuromedical Sys., Inc.* 12 F. Supp.2d 296, 299 (J. Parker) (S.D.N.Y. 1998) (reviewing entirety of alleged false statements in context, and finding 14 of 30 statements non-actionable).

## POINT I

### THE CHALLENGED STATEMENTS IN THE PRESS RELEASES WERE TRUE

INVESCO'S Lanham Act claim falls, first and fundamentally, because there is no single statement in either of the challenged press releases issued by DeAM that is literally false. This failure alone is sufficient grounds for dismissal of Count Five. *See Galerie Gmurzynska*, 257 F. Supp.2d at 631 ("[w]hile complaint allegations must generally be taken as true for purposes of a motion to dismiss, it does not follow that conclusory allegations and speculation, as presented here, will defeat such a motion"); *Randa*, 2000 U.S. Dist. LEXIS 17014, at *10 (dismissing Lanham Act claim because allegedly misleading statements were expressions of "opinion of a possible future event" and complaint was "bereft of any other allegations of false statements other than a conclusory assertion that false statements were made").

Indeed, when the press releases are read in their entirety, it is apparent that DeAM's expansion of its Global Institutional Fixed Income Investment team includes not only the addition of the four investment managers cited by name in the press releases, but also a dozen or more "additional senior staff" whose hirings by DeAM are not at issue in this action. (Compl. Exhs. G, H.) Those individuals are already working at DeAM, so the Press Releases, read in their entirety and in context, accurately announce an expansion of DeAM's Global Institutional

7

Fixed Income Investment team that has already occurred and is substantially in place.

Even with respect to the four investment managers named in the press releases, those releases are literally true in stating that the investment managers "will join" DeAM. INVESCO conflates the press release statement that DeAM "today announced a major expansion of its Institutional Fixed Income Investment team" with the date(s) on which the investment managers "will join" DeAM. The word "today" in the press releases referred to the date of the releases and not to the dates on which the investment managers will start working at DeAM. The press releases do not contain any falsity with respect to dates or timing.

The press releases are clear, specific, and factually accurate. Because there is no literal falsity in the press releases, the Lanham Act claim cannot stand.

## POINT II

### THE PRESS RELEASES WERE NOT MATERIALLY MISLEADING

Count Five (Lanham Act) must also be dismissed because INVESCO has failed to allege that the press releases are *materially* misleading. *See Groden v. Random House Inc.*, No. 94 Civ. 1074, 1994 U.S. Dist. LEXIS 11794, at *16-*18 (J. Martin) (S.D.N.Y., Aug. 23, 1994) (Lanham Act requires a showing that the "message of the challenged advertisement" is either literally false or, if literally true, "nevertheless likely to deceive or confuse customers"); *see also National Basketball Ass'n v. Motorola, Inc.*, 105 F.3d at 855 ("in addition to proving falsity, the plaintiff must also show that the defendants misrepresented an inherent quality or characteristic of the product . . . This requirement is essentially one of materiality") (citing *National Ass'n of Pharm. Mfrs. v. Ayerst Lab.*, 850 F.2d 904, 917 (2d Cir. 1988)). A plaintiff is not entitled to a presumption of materiality where, as here, the alleged statements are literally true and, in

determining whether the challenged statements are materially misleading, they should be "read in their entirety and in context." *See Cytyc*, 12 F. Supp.2d at 300; *see also Randa*, 2000 U.S. Dist. LEXIS 17014, at *8 ("in determining whether the text of the promotion is literally false, [the court] must consider the context of the promotion").

INVESCO's Lanham Act claim fails because the use in the press releases of the future tense (*viz.*, "will join") to describe the investment managers' prospective work for DeAM is not a misrepresentation as to the nature, characteristics, qualities or geographic origin of DeAM's services, and thus materially misleading to INVESCO customers, especially where at least 11 former INVESCO employees are already working at DeAM. "Liability under the Lanham Act must be predicated on a misrepresentation as to the nature, characteristics, qualities, or geographic origin of his or her or another person's goods." *Truck Components* 776 F. Supp. at 410. See also *BIEC Int'l Inc., v Global Steel Svcs., Ltd.*, 791 F. Supp. 489, 522, 552 (E.D. Pa. 1992) (press release by former employees starting a new competing venture, describing employees' former employers, former titles and former job functions, was not misleading).

Where the alleged misrepresentation is an omission, courts are especially careful to permit Lanham Act liability only where the omission goes to "an essential characteristic" of the party's product or service. *Truck Components*, 776 F. Supp. at 410-11 (dismissing complaint for failure to state Lanham Act claim because alleged omission, even if material to a consumer's decision to purchase, was not misrepresentation "about a product or service"); *see also Global Disc. Travel Serv.* 960 F. Supp. at 707 (dismissing plaintiff's Lanham Act claim because interpretation of underlying agreement was ambiguous at time challenged statements were made). Here, the press releases were not in any manner misleading with respect to the nature, characteristics, qualities, or geographic origin of DeAM's services.

9

*Truck Components* is especially instructive here, because it addressed Lanham Act claims arising from alleged omissions from a literally true press release. In *Truck Components*, the plaintiff claimed that a press release identifying the formation of a new business unit, while literally true, was silent on a material point; namely, that some consumers might interpret the press release to mean that defendant was violating the terms of a non-compete with plaintiff. The Court reviewed the legislative history of Section 43(a) of the Lanham Act, noting that proposed language expressly permitting liability for material omissions was stricken from the statute "to respond to concerns that it could be misread to require that all facts material to a consumer's decision to purchase a product or service be contained in each advertisement." *Truck Components*, 776 F. Supp. at 410 (*citing* S. REP. NO. 100-515 *reprinted in* 1988 U.S. CODE CONG. & ADMIN. NEWS, 5577, 5603). Thus, Congress determined that not every omission of a fact material to a purchasing decision leads to Lanham Act liability.

The omission alleged by INVESCO here is not actionable because the nature, scope and interpretation of the investment managers' agreements with INVESCO are the subject of another litigation which is not yet resolved, and to which DeAM is not a party. Where a statement or omission could be open to multiple interpretations, "the proper inquiry is whether the law was ambiguous *at the time . . . the alleged statements were made.*" *Global Disc. Travel Serv.*, 960 F. Supp. at 706 (*citing Dial A Car, Inc. v. Transportation, Inc.*, 82 F.3d 484 (D.C. Cir. 1996) (emphasis in original). If the law was ambiguous at the time the alleged statements were made, the alleged statements are not actionable.

Here, the statement that the investment managers "will join" DeAM, without further elaboration, was the most accurate statement that could have been made at the time, given the pending litigation between INVESCO and the investment managers regarding their

10

respective rights and obligations under the managers' agreements with INVESCO. INVESCO's Lanham Act claim, then, is nothing more than an attempt to "us[e] . . . the Lanham Act to try to enforce its preferred interpretation" of the agreements. *Global Disc. Travel Serv.*, 960 F. Supp. at 706-707. Allowing Lanham Act liability under these facts would put courts in the position of policing press releases and advertising to a degree that was expressly rejected by the Senate when it considered amendments and voted not to include omissions as actionable under the Lanham Act.

INVESCO will also be unable to prove that the press releases were materially misleading because any statement regarding when the investment managers "will join" DeAM is by definition a predictive statement regarding a future event, and such statements are not actionable under the Lanham Act as a matter of law because they "cannot be proven true or false." *Randa Corp.*, 2000 U.S. Dist. LEXIS 17014, at *8. Therefore, if and to the extent that INVESCO alleges that the press releases, while true, were "misleading" because they did not identify a specific date in the future when the investment managers "will join" DeAM, did not mention a contractual dispute between INVESCO and the investment managers concerning the notice provision in their agreements with INVESCO, and thus suggest that the Kentucky Partners' arrival at DeAM is "imminent," (Compl. ¶ 18), they are not actionable under the holding of *Randa*. In *Randa*, the defendant wrote to a potential customer that its acquisition of certain licenses "will cause a revenue loss [to plaintiff's licensor] of up to 30%." *Randa Corp.*, 2000 U.S. Dist. LEXIS 17014, at *3. The court held that because the statement was an "opinion of a possible future event" and a "prediction," it was not actionable under the Lanham Act, and dismissed the claim. *Randa Corp.*, 2000 U.S. Dist. LEXIS 17014, at *10. Here, as in *Randa*, the alleged misstatements in the press releases discuss only a future event – namely, when the named

11

investment managers will arrive at DeAM – and thus cannot be proven true or false by INVESCO and, accordingly, are not actionable under the Lanham Act.

Finally, INVESCO's Lanham Act claim is not materially misleading as a matter of law because the only alleged misrepresentation is an omission regarding the respective contractual rights of INVESCO and the investment managers. Courts are understandably reluctant to allow the Lanham Act to be used "to transform a contractual dispute between parties into a federal cause of action, particularly where a party expresses an opinion about a contractual right." *Global Disc. Travel Serv.*, 960 F. Supp. at 707 (*citing Truck Components*, 776 F. Supp. at 410-11). Accordingly, federal courts across the country have dismissed Lanham Act claims where the alleged omission turns on one party's view of a contract interpretation claim. *See Global Discount*, 960 F. Supp. at 707 (where the truthfulness of defendants statement depended on the outcome of an ongoing contractual dispute, the court held that defendant's statements were "incapable of being proved false" and plaintiff is unable to satisfy a Lanham Act claim); *Dial A Car*, 82 F.3d at 490 (dismissing Lanham Act claim based on defendant's alleged violation of a D.C. Taxicab Commission Order, where the D.C. Taxicab Commission had not determined whether defendant had violated its Order; declining to "transform . . . the Lanham Act into a handy device to reach and decide all sorts of local law questions"); *Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 230-32 (3d Cir. 1990) (upholding District court's ruling that there was no violation of the Lanham Act where FDA had not conclusively ruled on the drug advertised by defendant, therefore defendant's statements could not be deemed false); *Truck Components*, 776 F. Supp. at 411 ("This case is essentially a breach of contract case. This Court is unwilling to expand the bound of the Lanham Act . . . to every breach of a covenant not to compete.)

For all of these reasons, INVESCO cannot as a matter law demonstrate that the press releases were materially misleading. Accordingly, Count Five (Lanham Act) should be dismissed for failure to state a claim.

## POINT III

## INVESCO'S REMAINING STATE LAW CLAIMS SHOULD ALSO BE DISMISSED

Once the Court determines that INVESCO's Lanham Act claim should be dismissed for failure to state a claim under Rule 12(b)(6),, then it is a short and necessary logical step to also conclude that the supplemental state law claims should be dismissed as well.

The injuries alleged in INVESCO's four pendent state law claims appear to arise from the investment managers' notice to INVESCO of their intent to resign from INVESCO and to join DeAM. These actions, and any injuries that result, pre-date the issuance of the press releases. INVESCO thus has not alleged – nor can it allege– that the press releases caused the injuries alleged in the state law claims.

Because INVESCO's state law claims all arise from events other than the press releases challenged by INVESCO in its Lanham Act claim, the Court should decline to exercise supplemental jurisdiction over the pendent state claims. 28 U.S.C. § 1367(c)(4). If there is no remaining basis for federal jurisdiction, interests of federalism and comity strongly augur in favor of this Court declining jurisdiction over the pendent state claims where the Court has yet to invest any considerable time in the matter and the Supreme Court, New York County, where this action was originally filed, is equally convenient for the parties. *See Kidder, Peabody & Co., Inc. v. Maxus Energy Corp.*, 925 F.2d 556, 563-64 (2d Cir. 1991) (identifying factors for court to consider when determining whether to exercise jurisdiction over pendent state claims after

federal claims have been dismissed).

For these reasons, this motion is case dispositive and once the Lanham Act claim falls, the Court should decline jurisdiction over the remaining state law claims, and therefore dismiss the complaint in its entirety.

## CONCLUSION

For all of the foregoing reasons, defendant Deutsche Investment Management Americas, Inc. respectfully requests that this Court dismiss Count Five (Lanham Act) of plaintiff's complaint and decline to exercise supplemental jurisdiction over the state law claims asserted in Counts One through Four.

Dated: April 24, 2007

BAKER & HOSTETLER LLP

By: _____
John Siegal (JS-1036)
Ona T. Wang (OW-5462)
Essence Liburd (admission pending)

666 Fifth Avenue
New York, New York 10103
(212) 589-4200
(212) 589-4201 (fax)

*Attorneys for defendant Deutsche Investment Management Americas Inc.*

14