UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INVESCO INSTITUTIONAL (N.A.), INC., <br><br> Plaintiff, <br><br> v. <br><br> DEUTSCHE INVESTMENT MANAGEMENT AMERICAS INC. <br><br> Defendant. | Civ. No. 07-CV-2622 (AKH)(MHD) <br><br> **FIRST AMENDED COMPLAINT** <br><br> JURY TRIAL DEMANDED |

The Plaintiff, INVESCO Institutional (N.A.), Inc. ("INVESCO"), by and through its undersigned attorneys, hereby sets forth its First Amended Complaint against Defendant Deutsche Investment Management Americas Inc. ("Deutsche") as follows:

INTRODUCTION

1. This dispute arises from an unlawful scheme by Deutsche to lift out INVESCO's institutional fixed income business by inducing a team of key employees to resign simultaneously and then using their departures to lure lower level employees and INVESCO's most valuable clients to Deutsche. As Kevin Parker, a high-level Deutsche executive, revealed in an e-mail message sent to the CEO of INVESCO's corporate parent on the eve of the mass resignations, Deutsche's goal was to force INVESCO to capitulate to its demand that INVESCO not resist the lift-out and instead agree to facilitate it.

2. The first phase of Deutsche's scheme involved its secret collusion with the four senior executives who headed INVESCO's fixed income business (defined below as the "WFI Global Partners"), to garner their commitment to join INVESCO and their cooperation in securing similar commitments from their direct reports and other second-tier level employees. In the next phase, Deutsche confronted INVESCO immediately prior to the date when the resignations had been carefully coordinated to begin, demanding INVESCO's acquiescence and threatening a "near total asset loss" for the business. When INVESCO did not immediately accede to Deutsche's extortionate demands, Deutsche pulled the trigger, causing a wave of resignations by INVESCO employees on March 26, 2007.

3. On that same date, Deutsche launched another critical phase of its scheme, namely, a deceptive promotional campaign designed to increase the pressure on INVESCO, by luring clients and employees to Deutsche with representations that the WFI Global Partners had joined, or were imminently about to join, Deutsche to head up its new fixed income business. Deutsche knew these representations were false because the WFI Global Partners had committed in writing to remaining at INVESCO as they served out contractual one-year notice requirements and because Deutsche otherwise had no operation in place to service institutional fixed income clients.

4. As set forth below, Deutsche's conduct supports claims of tortious interference with contract, aiding and abetting breach of fiduciary duty, misappropriation of trade secrets, unfair competition, and violation of Section 43(a) of the Lanham Act, entitling INVESCO to injunctive relief and/or money damages.

## THE PARTIES, JURISDICTION AND VENUE

5.   INVESCO is a global financial services firm. INVESCO is ultimately owned by AMVESCAP PLC ("AMVESCAP"). The Worldwide Fixed Income Group ("WFI"), formerly referred to from time to time as the INVESCO Fixed Income/Stable Value Division, is an operating group within AMVESCAP focused upon the management of fixed income investments with many of the group's members employed by INVESCO. INVESCO has operations in the metropolitan Louisville, Kentucky, area. INVESCO is incorporated under the laws of the State of Delaware, and maintains its principal place of business in the State of Georgia.

6.   Defendant Deutsche Investment Management Americas Inc. is incorporated under the laws of the State of Delaware and maintains its principal place of business in New York, New York.

7.   This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 because this case arises under the Trademark Act of 1946, 15 U.S.C. §§ 1051, et seq. (the "Lanham Act").

8.   This Court has jurisdiction over INVESCO's state law claims pursuant to 28 U.S.C. § 1367 and the doctrine of supplemental jurisdiction.

9.   This Court has personal jurisdiction over Deutsche because it maintains its principal place of business in this judicial district.

10.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Deutsche resides in this district.

## THE WRONGFUL ACTS OF DEFENDANT

11. Stephen M. Johnson ("Johnson"), James F. Guenther ("Guenther"), Kenneth R. Bowling ("Bowling"), and Randy G. Paas ("Paas") were, as of March 23, 2007, long-standing employees of INVESCO working in its WFI group in Louisville. That group included approximately 155 employees, approximately 86 of whom were investment professionals. Johnson, Guenther, Bowling and Paas achieved the designation of Global Partner. Such status is reserved for select employees who have demonstrated exceptional ability and have made a substantial or unique contribution to INVESCO's business. Global Partners at INVESCO are senior executives, and attaining the status of Global Partner is a very significant achievement. Of all the employees in the INVESCO WFI group in Louisville, only six were Global Partners as of March 23, 2007.

12. Johnson, Guenther, Bowling and Paas (collectively, the "WFI Global Partners") each signed a Global Partner Agreement ("GP Agreement"). True and correct copies of such agreements are attached (Johnson at Exhibit "A," Guenther at Exhibit "B," Bowling at Exhibit "C," and Paas at Exhibit "D"). Each of these agreements was renewed earlier this year for the 2007 calendar year, and each of the WFI Global Partners was thus under contract with INVESCO as of March 23, 2007. In their GP Agreements, the WFI Global Partners promised, among other things, that they would provide twelve months advance written notice of any termination of their GP Agreement. In fact, each Global Partner Defendant was permitted to choose his respective notice period within the range of four to twelve months, and each elected a twelve month notice period. In addition to the notice provision of the GP Agreements, such agreements also contain

provisions regarding confidentiality of company information, non-solicitation of customers, and non-pirating of company employees.

13. During each year of their recent employment at INVESCO, each of the WFI Global Partners has received substantial compensation exceeding hundreds of thousands of dollars. In addition to salary and bonus, the WFI Global Partners have also been rewarded with stock options and restricted stock awards, as well as generous benefits.

14. In addition to cash and other compensation, each of the WFI Global Partners has also been permitted access to confidential and trade secret information of INVESCO to be used for the sole and exclusive purpose of benefiting the business. This confidential and trade secret information includes, but is not limited to, information about proprietary software applications, customer lists, customer preferences, investment holdings and amounts, pricing and fee lists, employee compensation information, and business strategies and plans of the company.

15. Over a period of months prior to March 23, 2007, each of the WFI Global Partners carried on secret discussions with Deutsche regarding leaving employment at INVESCO and becoming employed at Deutsche. Deutsche had been scheming with the WFI Global Partners for many months – even as the WFI Global Partners' agreements were renewing – in an effort to raid illegally WFI's business. The discussions contemplated the WFI Global Partners exiting on short notice and in complete disregard and violation of the WFI Global Partners' obligations, including their 12-month notice

obligations, under the GP Agreements. Deutsche was well aware of the terms of the GP Agreements, as it had secured copies of the contracts at the outset of these negotiations.

16. Deutsche retained a professional recruiting firm, Russell Reynolds Associates ("Russell Reynolds"), to assist in executing its unlawful scheme. Upon information and belief, because the WFI Global Partners were subject to non-solicitation agreements Deutsche deployed Russell Reynolds to contact other INVESCO professionals whom the WFI Global Partners were interested in bringing over with them to Deutsche. Upon information and belief, Russell Reynolds contacted INVESCO employees identified by Deutsche, in an effort to mask the WFI Global Partners' breaches of their GP Agreements and other legal duties, as well as Deutsche's inducement of those breaches. Many of the employees Russell Reynolds contacted have now resigned from INVESCO and indicated they intend to commence employment with Deutsche.

17. Deutsche's scheme required careful financial planning and analysis. Upon information and belief, Deutsche secured the cooperation and collaboration of the WFI Global Partners in preparing detailed financial projections and other planning materials. The material assistance provided by the WFI Global Partners violated their common law duties and the terms of the GP Agreements, which specifically spelled out the WFI Global Partners' duties of loyalty and prohibited them from disclosing confidential information or performing any business activity for a competitor of INVESCO.

18. Deutsche revealed its plan to hire away substantially all of INVESCO's WFI core personnel in a meeting held on March 23, 2007. On that date, Kevin Parker,

Deutsche's Head of Asset Management, appeared and met with the Chief Executive Officer of AMVESCAP, Martin Flanagan, at Mr. Flanagan's office. Parker indicated that, on Monday and Tuesday of the following week, INVESCO would receive a series of resignations of key WFI group personnel, including the WFI Global Partners, and that, after the resignations were concluded, there would be virtually nothing left of the operation. Mr. Parker further indicated that Deutsche's raid was a *fait accompli* and INVESCO should simply accept this reality.

19. Mr. Parker subsequently delivered to Mr. Flanagan a proposed Memorandum of Understanding (the "Memorandum") and insisted that Mr. Flanagan review and execute the document. According to the Memorandum, a true and correct copy of which is attached as Exhibit "E," INVESCO was to assist in an orderly transition of the business to Deutsche. The Memorandum, if executed, would also have released all claims in relation to the employee raid, and would specifically have waived the applicable twelve-month notice provisions of the GP Agreements entered into by the WFI Global Partners.

20. The intentions of Parker and others at Deutsche became even more evident in short order. By email dated March 25, 2007, Parker again contacted Mr. Flanagan. A true and correct copy of the referenced email is attached as Exhibit "F." In the email, Parker reminds Mr. Flanagan that INVESCO's WFI team "will be resigning on Monday afternoon and the chance of changing their minds at that point was remote." Parker goes on to "impress upon" Mr. Flanagan "the point that the <u>resignation of so many of the key members of your staff would undoubtedly result in near total asset loss for investco (sic)</u>" (emphasis supplied).

21.  Thus, Deutsche, by verbal and written word of Mr. Parker, advised INVESCO that it had interfered with the contractual obligations and fiduciary duties owed by the WFI Global Partners to INVESCO.

22.  Notwithstanding Mr. Parker's threatening communications, Mr. Flanagan and INVESCO refused to sign the Memorandum and refused to permit the WFI Global Partners to thumb their noses at their contractual notice obligations.

23.  On March 26, 2007, Deutsche set the next phase of its scheme in motion. Having learned that INVESCO would not capitulate to its demands, Deutsche caused the four WFI Global Partners to deliver essentially identical resignation letters to INVESCO. In the resignation letters, each of the WFI Global Partners represented that he would honor the GP Agreement's one year notice provision. INVESCO also received resignation notices from a team of employees who worked with the WFI Global Partners.

24.  On that same date, Deutsche issued a press release designed to mislead INVESCO's clients into believing that it had already hired away the four WFI Global Partners and that their arrival at Deutsche was imminent. A true and correct copy of the press release is attached as Exhibit "G." The heading of the press release touted: "DEUTSCHE ASSET MANAGEMENT ANNOUNCES MAJOR EXPANSION OF ITS GLOBAL INSTITUTIONAL FIXED INCOME INVESTMENT TEAM." The body of the release opened with the sentence that Deutsche "today announced a major expansion of its Institutional Fixed Income Investment team." Misleadingly using the present tense, the press release quoted Mr. Parker as claiming that "[t]his _is_ a significant expansion to our Global and U.S. Institutional Fixed Income Investment team" (emphasis supplied).

25. Building on the effort to create the impression that the hiring of the four WFI Global Partners was a *fait accompli*, the release went on to claim that "four senior investment managers . . . will join [Deutsche] from INVESCO," without acknowledging that each of these individuals had submitted letters in which they represented that they would remain at INVESCO for another full year. In fact, nowhere in the press release did Deutsche disclose that the WFI Global Partners, who were identified by name in the body of the release, could not start work at Deutsche under their GP Agreements for a full year.

26. In an effort to further obfuscate the truth, Deutsche issued a second deceptive press release the following day, March 27, 2007. A true and correct copy of the press release is attached as Exhibit "H." In that press release, Deutsche trumpeted that a London-based INVESCO employee, Mark Dowding, "will join Deutsche Bank's Asset Management division." By describing a role at Deutsche Bank and identifying an individual to whom he supposedly will report, Deutsche sought to convey the false impression that Dowding's arrival at Deutsche was imminent when, in fact, Dowding has committed to working at INVESCO through the term of his four-month notice period.

27. On March 27, 2007, INVESCO terminated the employment of Randy Paas for cause and commenced litigation against him in the United States District Court for the Western District of Kentucky. The other three GWI Global Partners remain employed by INVESCO, although INVESCO has placed each of them on paid leaves of absence and added them as defendants in the previously commenced litigation against Mr. Paas. On March 28, 2007, the three GWI Global Partners who remain employed by INVESCO commenced litigation against INVESCO's corporate affiliate, AMVESCAP, in Kentucky state court. AMVESCAP has removed that litigation to the United States District Court

for the Western District of Kentucky, where its previously filed action against the GWI Global Partners is pending. The two Kentucky lawsuits have now been consolidated.

28. Even as litigation between the various parties was underway, Deutsche's deceptive promotional campaign continued. Upon information and belief, on or about March 30, 2007, Deutsche caused form letters to be sent, on Deutsche letterhead and under the signature of one or more employees who had recently resigned from INVESCO, to INVESCO's clients, which letters gave the impression that Deutsche had a fully operational fixed income operation in Louisville staffed by a team of former INVESCO employees. A true and correct copy of one of these letters, dated March 30, 2007, is attached as Exhibit "I."

29. In the form letter, as in the press releases sent earlier in the week, Deutsche sought to create the impression that all of the WFI Global Partners were set imminently to join Deutsche to head its fixed income business. Immediately after listing former INVESCO employees who had joined Deutsche that week, Deutsche then listed Bowling, Guenther, Paas, Johnson, and Dowding as individuals who "will be joining" Deutsche, again with no mention that each one had committed to remaining employed by INVESCO for several more months. The intent and effect of the letter was to suggest to INVESCO's clients that the WFI Global Partners still employed by INVESCO were following on the heels of the other employees, who had already left INVESCO.

30. Deutsche also used mainstream media outlets to further its scheme. On April 16, 2007, *Pensions & Investments*, a publication widely read by INVESCO's and Deutsche's clients and employees, published an article concerning Deutsche's raid on

INVESCO. In a portion of the article in which Parker is quoted extensively, it is falsely reported that Deutsche had <u>already</u> hired all of the WFI Global Partners. The article also inaccurately stated that "Deutsche is <u>now officially opening an office in Louisville</u>," when, in fact, Deutsche had not yet even leased office space in Louisville to house staff and operations. A true and correct copy of the April 16, 2007, *Pensions & Investments* article is attached as Exhibit "J." While the false information is not directly attributed to Deutsche, Deutsche provided it, upon information and belief, to the reporter working on the story, with the intention that it be published and read by INVESCO's clients and employees.

31.  In addition, Deutsche has made false promotional statements directly to its and INVESCO's clients. Upon information and belief, Deutsche has received inquiries from clients and potential clients, voicing concern about Deutsche's efforts to hire away INVESCO's WFI team. In an effort to mollify these clients (and retain or win their business), Deutsche has told them that it did not carry out a raid on INVESCO, but rather the INVESCO employees decided to move without any inducement on the part of Deutsche. In fact, Deutsche actively solicited and recruited INVESCO's employees as part of its scheme to orchestrate a lift-out of INVESCO's entire WFI business.

## Count One – Tortious Interference

32.     INVESCO incorporates by reference the provisions of paragraphs 1 through 31, above, as if fully set forth herein.

33.     Deutsche has tortiously interfered with contractual and employment relationships of INVESCO. With full and complete knowledge of the notice as well as the other provisions of the GP Agreements, Deutsche has nonetheless maliciously induced or tempted to induce the WFI Global Partners to breach their GP Agreements and thereby cause harm to INVESCO. By way of further example, Deutsche has also maliciously induced or attempted to induce the WFI Global Partners to breach the confidentiality, nonsolicitation and anti-pirating portions of their Global Partner agreements, in addition to other portions of said agreements. The wrongful actions of Deutsche have both caused breaches of the GP Agreements by the WFI Global Partners, as well as made performance under the GP Agreements by the WFI Global Partner partners more difficult.

34.     As a direct and proximate result of the tortious conduct of Deutsche, INVESCO has sustained and will incur further damages in an amount to be proven at trial. INVESCO has suffered and will continue to suffer immediate and irreparable harm, and will continue to suffer such injury until the tortious conduct of Deutsche is preliminarily and permanently enjoined.

### Count Two – Aiding and Abetting Breaches of Fiduciary Duties

35. INVESCO incorporates paragraphs 1 through 34, above, as if fully set forth herein.

36. The WFI Global Partners each owed fiduciary duties to INVESCO, including duties of loyalty, candor, disclosure and diligence. The WFI Global Partners specifically acknowledged the existence of these fiduciary duties in their GP Agreements with INVESCO.

37. By virtue of the above-described and other actions, the WFI Global Partners breached their fiduciary duties to INVESCO by, among other things, competing and preparing to compete with INVESCO; using INVESCO's facilities, resources, time and confidential information to compete and/or prepare to compete; by using INVESCO's business records and confidential information for their personal benefit; and by otherwise usurping and misappropriating opportunities and resources belonging to INVESCO, all the time while under contract with INVESCO.

38. By virtue of its above-described and other actions, Deutsche has actively aided and abetted the WFI Global Partners' breaches of fiduciary law duties, thereby rendering Deutsche liable for compensatory and punitive damages.

39. As a direct and proximate result of the tortious conduct of Deutsche, INVESCO has sustained and will incur further damages in an amount to be proven at trial. INVESCO has suffered and will continue to suffer immediate and irreparable harm,

and will continue to suffer such injury until the tortious conduct of Deutsche is preliminarily and permanently enjoined.

Count Three – Misappropriation of Trade Secrets

40.     INVESCO incorporates by reference the provisions of paragraphs 1 through 39, above, as if fully set forth herein.

41.     During their employment with INVESCO, the WFI Global Partners were given access to INVESCO's trade secrets and confidential and proprietary information, as described above.

42.     This trade secret and confidential and proprietary information provided INVESCO with a competitive advantage over other companies in the same field.

43.     Deutsche knowingly engaged in a conspiracy to and, upon information and belief, did unlawfully obtain trade secret and/or confidential and proprietary information of INVESCO from the WFI Global Partners.

44.     By virtue of its above-described and other actions, upon information and belief, Deutsche misappropriated INVESCO's trade secrets and/or confidential and proprietary information to plan and launch its unlawful scheme to raid INVESCO and ruin its business.

45.     As a direct and proximate result of the tortious conduct of Deutsche, INVESCO has sustained and will incur further damages in an amount to be proven at trial. INVESCO has suffered and will continue to suffer immediate and irreparable harm,

and will continue to suffer such injury until the tortious conduct of Deutsche is preliminarily and permanently enjoined.

Count Four – Unfair Competition

46.     INVESCO incorporates by reference paragraphs 1 through 45, above, as if fully set forth herein.

47.     Deutsche knowingly engaged in a conspiracy to and, upon information and belief, did illegally obtain trade secrets and/or confidential and proprietary information and materials of INVESCO from the WFI Global Partners.

48.     By virtue of its above-described and other actions, Deutsche engaged in unfair competition in attempting to obtain and, upon information and belief, obtaining INVESCO's trade secrets and confidential/proprietary information, unlawfully using that information to devise and launch a full-scale raid on INVESCO's business, and in attempting to destroy that business through unlawful means.

49.     In furtherance of its illegal scheme, Deutsche has undertaken a course of action to specifically target and extract from INVESCO a quantum and quality of personnel which, if successfully removed, would threaten to severely cripple the WFI group at INVESCO as predicted in the Parker email message described above and attached as Exhibit "F."

50.     As a direct and proximate result of the tortious conduct of Deutsche, INVESCO has sustained and will incur further damages in an amount to be proven at trial. INVESCO has suffered and will continue to suffer immediate and irreparable harm,

and will continue to suffer such injury until the tortious conduct of Deutsche is preliminarily and permanently enjoined.

Count Five – Lanham Act

51.     INVESCO incorporates by reference paragraphs 1 through 50, above, as if fully set forth herein.

52.     As described in detail above, Deutsche's press releases, form letters to clients, media statements and statements to individual clients contain literally false statements and/or statements that, while literally true, are implicitly false or misleading. Such statements, which were used in advertising or promotion in commerce, misrepresent characteristics, capabilities, and qualities of the services and commercial activities of both Deutsche and INVESCO.

53.     Deutsche's various advertising/promotional statements therefore mislead and harm customers and consumers, as well as damage INVESCO's good name and reputation in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

54.     The aforesaid acts were undertaken willfully and deliberately and with the intention of causing confusion, mistake or deception.

55.     As a direct and proximate result of the aforesaid acts of Deutsche, INVESCO has sustained and will incur further damages in an amount to be proven at trial, as well as attorneys' fees and costs. INVESCO has suffered and will continue to suffer immediate and irreparable harm, and will continue to suffer such injury until the tortious conduct of Deutsche is preliminarily and permanently enjoined.

WHEREFORE, having set forth its Complaint above, Plaintiff INVESCO Institutional (N.A.), Inc. demands that judgment be entered against Defendant Deutsche Investment Management Americas Inc. as follows:

(A)     on Count One, damages in a precise amount to be determined at trial, together with preliminary and permanent injunctive relief from defendant's tortious interference;

(B)     on Count Two, damages in a precise amount to be determined at trial, together with preliminary and permanent injunctive relief from defendant's aiding and abetting breaches of fiduciary duties;

(C)     on Count Three, damages in a precise amount to be determined at trial, together with preliminary and permanent injunctive relief from defendant's misappropriation of trade secrets;

(D)     on Count Four, damages in a precise amount to be determined at trial, together with preliminary and permanent injunctive relief from defendant's unfair competition;

(E)     on Count Five, damages in a precise amount to be determined at trial, together with preliminary and permanent injunctive relief from defendant's Lanham Act violations;

(F)     attorneys' fees and costs in a precise amount to be determined at trial; and

(G)     such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff INVESCO Institutional (N.A.), Inc. demands a trial by jury.

Dated: New York, New York
       May 9, 2007

                                              ALSTON & BIRD LLP

                                              By: _____

                                              John F. Cambria (JC 4098)
                                              Michael E. Johnson (MJ 0299)
                                              90 Park Avenue
                                              New York, NY  10016-1387
                                              212-210-9400

                                              *Attorneys for Plaintiff*
                                              *INVESCO Institutional (N.A.), Inc.*

Of Counsel:

Robert P. Riordan
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA  30309-3424
Phone:  (404) 881-7000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INVESCO INSTITUTIONAL (N.A.), INC., <br><br> Plaintiff, <br><br> v. <br><br> DEUTSCHE INVESTMENT MANAGEMENT AMERICAS INC. <br><br> Defendant. | Civ. No. 07-CV-2622 (AKH)(MHD) <br><br> **AFFIDAVIT OF SERVICE** <br><br> JURY TRIAL DEMANDED |

STATE OF NEW YORK    )
                     ) ss:
COUNTY OF NEW YORK   )

Kim Fitzgerald, being duly sworn, deposes and says: that she is over the age of eighteen years, that she is employed in the office of Alston & Bird LLP, attorneys for Plaintiff, Invesco Institutional (N.A.), Inc.; that she did on the 9th day of May, 2007, serve the enclosed First Amended Complaint by depositing the same with an overnight delivery service in a wrapper properly addressed. Said delivery was made prior to the latest time designated by the overnight delivery service for overnight delivery. The address and delivery service are indicated below:

John Siegal, Esq.
Baker Hosteler LLP
666 Fifth Avenue
New York, NY 10103

_Kim Fitzgerald_
Kim Fitzgerald

Sworn to before me
this 9th day of May, 2007.

_Notary Public_

BIRGIT KURTZ
Notary Public, State of New York
No. 02KU6005359
Qualified in New York County
Commission Expires April 13, 2010

LEGAL02/30363582v1