UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INVESCO INSTITUTIONAL (N.A.), INC. <br><br> Plaintiff, <br><br> -against- <br><br> DEUTSCHE INVESTMENT MANAGEMENT AMERICAS, INC., <br><br> Defendant. | CIVIL ACTION NO. 07 Civ. 2622 (AKH) (MHD) |

**REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

**BAKER & HOSTETLER LLP**
John Siegal (JS-1036)
Ona T. Wang (OW-5462)
Essence Liburd (admission pending)
666 Fifth Avenue
New York, New York 10103
(212) 589-4200
(212) 589-4201 (fax)
*Attorneys for Defendant Deutsche
Investment Management Americas, Inc.*

May 14, 2007

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................ 1
ARGUMENT ................................................................................................................... 3
POINT I ........................................................................................................................... 4
    INVESCO HAS MADE NO SHOWING OF LITERAL FALSITY ......................... 5
POINT II .......................................................................................................................... 9
    INVESCO'S CLAIM THAT DEAM'S PRESS RELEASES WERE
        MATERIALLY MISLEADING IS NOT ACTIONABLE UNDER THE
        LANHAM ACT ................................................................................................ 10
POINT III ....................................................................................................................... 13
    NO CONTINUING BASIS FOR SUPPLEMENTAL JURISDICTION EXISTS
        ONCE THE LANHAM ACT CLAIM IS DISMISSED ....................................... 14
CONCLUSION .............................................................................................................. 17

TABLE OF AUTHORITIES

Page

**Cases**

*Croton Watch Co., Inc. v. National Jeweler Magazine, Inc., et al.,* 2006 U.S. Dist. LEXIS 55753
(S.D.N.Y. Aug. 7, 2006, J. Daniels)....................................................................................... 6

*Cytyc Corp. v. Neuromedical Sys., Inc.,* 12 F. Supp.2d 296 (J. Parker) (S.D.N.Y. 1998) ............ 4

*Dunlop v. City of New York,* No. 06 Civ. 433, 2006 WL 2853972 (J. Karas) (S.D.N.Y., Oct. 4, 2006) ............................................................................................................................... 16

*Galerie Gmurzynska v. Hutton, et al.,* 355 F.3d 206 (2d Cir. 2004) ...................................... 6, 7

*Global Disc. Travel Serv. v. Trans World Airlines, Inc.,* 960 F. Supp. 701 (S.D.N.Y. 1997)...... 10

*Johnson & Johnson-Merck Consumer Pharms Co. v. Procter & Gamble Co.,* 285 F. Supp.2d 389
(S.D.N.Y. 2003) ............................................................................................................... 11

*Kidder, Peabody & Co., Inc. v. Maxus Energy Corp.,* 925 F.2d 556 (2d Cir. 1991) .................. 14

*Luongo v. Nationwide Mutual Ins. Co.,* No. 95 Civ. 3190(MBM), 1996 WL 445365 (S.D.N.Y.
Aug.7, 1996) ............................................................................................................... 14, 15

*Minnesota Life Ins. Co. v. AXA Inv. MGR.,* Civ. 03-4383, 2005 WL 1475336 (D.MN. June 22, 2005) ............................................................................................................................... 8

*OccuNomix Int'l LLC v. North Ocean Ventures, Inc.,* No. 03 Civ. 6047, 2003 WL 22240660 (J.
Lynch) (S.D.N.Y., Sep. 30, 2003) ...................................................................................... 14

*Old Republic Ins. Co. v. Hansa World Cargo Service, Inc.,* 170 F.R.D. 361 (J. Edelstein)
(S.D.N.Y. 1997) ............................................................................................................... 4

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.,* 369 F.Supp.2d 353 (E.D.N.Y. 2005)............ 4

*Riggs Inv. Mgmt. Corp. v. Columbia Inv. Partners,* 966 F. Supp. 1250 (D.D.C. 1997)............ 8, 9

*Truck Components, Inc. v. K-H Corp.,* 776 F. Supp. 405 (N.D. IL. 1991)................................ 12

*United States Fire Ins. Co. v. United Limousine Serv., Inc.,* 328 F. Supp.2d 450 (S.D.N.Y. 2004)
....................................................................................................................................... 15, 16

**Statutes**

28 U.S.C. §1367(c) ........................................................................................................ 13

## PRELIMINARY STATEMENT

INVESCO'S Lanham Act claim fails at every level.

*First*, the statements plaintiff complains of are not literally false and, thus, cannot form the basis for a claim under the Lanham Act. The plain language of the press releases offers no room for dispute, despite INVESCO's efforts to project meaning onto the words that is not there. The plain fact is that DeAM did not make any specific statement about when the four investment managers will be cleared to work for DeAM. The statement that they "will join" DeAM in the future is indisputably true. INVESCO's effort to marshal legal authority in support of its position fails completely; it cites only Lanham Act cases in which firms improperly cited investment track record data from the previous employers of their investment managers. DeAM has done no such thing here. INVESCO has offered no authority whatsoever supporting its theory that the press releases were literally false because they stated that the investment managers "will join" DeAM. (*See* Point I *below*).

*Second*, the statements complained of were not materially misleading. When the investment managers will be clear to work for DeAM was and remains a hotly contested and ambiguous legal issue. The existence of that legal dispute is what caused any ambiguity in the press releases, not some sinister *sub rosa* meaning as INVESCO contends. The Lanham Act does not require a party to litigation to explain an adversary's legal theory in its press releases, and the Act protects against claims based on the omission of such disputed information. Moreover, the press releases announced not only that the four senior managers currently embroiled in litigation will join DeAM but also that twelve others who were then already working for DeAM were joining as well.

INVESCO tries to waive off this aspect of the press release with its conspiratorial theory about a "raid" of the four senior managers, but that rhetoric cannot explain away that at the time of the press release, twelve employees had already voluntarily resigned from INVESCO, had already joined and begun working for DeAM in an institutional fixed income asset management operation based in Louisville, Kentucky, and that this was a major expansion of DeAM's domestic capability because it previously had no such domestic operation. In this and all other regards, the press releases were not misleading; they were true. (*See* Point II *below*.)

*Third*, when the Lanham Act claim is dismissed, the entire complaint should be as well. The state law claims – tortious interference, aiding and abetting fiduciary breach, misappropriation of trade secrets, unfair competition – totally predominate and they present no novel issues whatsoever. This type of recruiting dispute is commonplace in the state courts and there simply is no reason to federalize this litigation. (*See* Point III *below*.)

INVESCO hastily tacked on its superficial and nonactionable Lanham Act claim to the previously filed and withdrawn state court complaint in a tactical attempt to justify INVESCO's effort to transfer this action to a federal court in Kentucky. Now it claims that this Court should retain jurisdiction even in the absence of federal subject matter jurisdiction solely to permit transfer of the action for "unitary adjudication" in the Kentucky federal court. But transfer of this case to Kentucky will destroy the diversity of citizenship that is the only basis for federal jurisdiction there, so that rationale is ephemeral. There ultimately is no basis for federal jurisdiction over this litigation between INVESCO and DeAM, and this Court should not countenance INVESCO's

2

gamesmanship and forum shopping. Let them sue DeAM in state court wherever they choose. There has been no tortious conduct by DeAM and there certainly has been no actionable public statement in the course of trade or advertising to support a Lanham Act claim. The investment managers became disgruntled with INVESCO, decided to leave, entered into agreements with DeAM and will begin working for DeAM when they are free to do so. That is fair competition and there is no reason to clutter the federal courts with INVESCO's attempt to scapegoat DeAM with INVESCO's own business failure.

## ARGUMENT[1]

INVESCO incorrectly argues (at 10) that its Lanham Act claim (Count Five) should not be dismissed because it contends that further discovery will "bolster INVESCO's evidence" of DeAM's false advertising. But this is not the applicable standard on a motion to dismiss. The proper assessment under Rule 12(b)(6) is whether the complaint, on its face, contains the elements of a claim for false advertising. Even though the Court should take the factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor, the Court is not obligated to draw "unreasonable inferences in [a] plaintiff's favor." *Reade-Alvarez v. Eltman, Eltman &*

---

[1] After business hours on Thursday, May 10, the same evening it served its opposition brief on this motion to dismiss with DeAM's reply brief due on Monday, May 14, INVESCO served a new complaint adding factual allegations intended to bolster its weak Lanham Act claim. Under Rule 15(d) of the Federal Rules of Civil Procedure, INVESCO's new complaint is a supplemental – not "amended" – complaint because it adds factual allegations that occurred after the date INVESCO filed its original complaint. Unlike amended complaints, supplemental complaints may not be filed as a matter of right, but require leave of court before they may be filed. INVESCO has not sought leave to file. The new factual allegations do not support INVESCO's Lanham Act claim. We address below the new allegations set forth in the supplemental complaint, but we urge the Court to disregard it as it was not permitted to be served without leave of the Court.

Cooper, P.C., 369 F.Supp.2d 353, 359 (E.D.N.Y. 2005). Even under the liberal notice pleading standards of Rule 8(a), "[s]imply pleading . . . a legal conclusion is insufficient to stave off dismissal." *Old Republic Ins. Co. v. Hansa World Cargo Service, Inc.*, 170 F.R.D. 361, 376 (J. Edelstein) (S.D.N.Y. 1997). Thus, this Court's task on this motion is to review the press releases that form the basis of INVESCO's Lanham Act claim and determine, as a matter of law, whether those press releases can be actionable. *See Cytyc Corp. v. Neuromedical Sys., Inc.*, 12 F. Supp.2d 296, 299 (J. Parker) (S.D.N.Y. 1998) ("On a Rule 12(b)(6) motion, the Court may determine as a matter of law whether the alleged statements are in fact actionable."). In this case, the alleged misrepresentations proffered by INVESCO cannot, as a matter of law, support its Lanham Act claim.

## POINT I

### INVESCO HAS MADE NO SHOWING OF LITERAL FALSITY

INVESCO's literal falsity argument verges on sophistry in at least four ways.

1. It is undisputed that, on March 26, DeAM "announced a major expansion of its Institutional Fixed Income Investment team," yet INVESCO argues (at 12) that the press release containing that statement was literally false because it was "conveying to the reader the message that the transition of the team from INVESCO was a *fait accompli*." This argument distorts the plain language of DeAM's press release. In the press release, DeAM plainly stated that on March 26th it had "announced a major expansion of its Institutional Fixed Income Investment team," but the press release contains no statement about *when* the personnel would begin active service for DeAM; all statements regarding the timing of the start dates was in the future tense – *viz.*, "will join." INVESCO's argument that the press release was "*conveying* to the reader" a

4

statement regarding the start date timing is not an argument that supports a literal falsity claim because the press release statements about timing – "will join" – were literally true.[2]

    2.    There was no language in the press release stating that all of the INVESCO employees would be joining DeAM "imminently" or that they would be "arriving in one fell swoop," as INVESCO erroneously contends (at 12-13). The statements that INVESCO challenges (at 12) do not convey anything regarding timing. For instance, "the four Kentucky Defendants and twelve second tier staff 'will join DeAM from INVESCO'" and there was nothing false about combining that statement about two different classes of employees in the context of the indefinite future timing ("will join") of their moves (unless INVESCO is complaining that the press release did not state the literal truth that the "second tier staff" were already working for DeAM). Likewise, the quote attributed to Kevin Parker stating that "[t]his is a significant expansion to our Global and U.S. Institutional Fixed Income Investment team" is literally true in that DeAM did not have an institutional fixed-income asset management team prior to March, 2007 and the twelve former INVESCO employees who began working for DeAM on the date of the press release indisputably therefore constituted "a significant expansion" (from zero to twelve).[3] By reading these conclusions into the carefully written and literally true language of the press release, INVESCO is not making

---

[2] Throughout these litigations, INVESCO appears to miss the point that the transition of Messrs. Bowling, Guenther, Johnson, and Dowding to DeAM, like the transition of the twelve employees who had left INVESCO and begun active service for DeAM, as of March 26, is a "*fait accompli.*" It is only a question of *when* DeAM will be clear to bring them in, but there is no question that they *will join* DeAM.

[3] Deposition testimony establishing that DeAM did not have a domestic institutional fixed-income asset management business until these March 26 hires and that the first hires are already working for DeAM out of temporary space in a Louisville hotel is annexed as Exhibits 1 and 2 respectively to the Declaration of John Siegal, dated May 14, 2007 (the "Siegal Decl.").

a literal falsity argument; it is projecting onto the press release concepts and meaning that are not present at all. Again, the press release contains no statement whatsoever regarding the timing of when any INVESCO employee would begin working for DeAM. No matter how INVESCO chooses to distort the plain language, the press release is literally silent as to the timing. By not making any statement about the timing – which was, and remains, a disputed and therefore ambiguous matter – DeAM was going out of its way to release a press statement that was literally true and, as shown below, not misleading.

3. INVESCO's attempt to rely, in its supplemental complaint, on an article published in *Pensions and Investments* on April 16th and the letter sent to customers by a former INVESCO employee, dated March 30, are totally misplaced.

DeAM is not responsible for the *Pensions and Investments* article, and cannot as a well-established matter of law be sued for statements published by a journalist. *See Galerie Gmurzynska v. Hutton, et al.*, 355 F.3d 206, 211-12 (2d Cir. 2004) ("The allegation that defendants caused a journalist to write an article about the controversy with the museum is . . . inadequate under the Lanham Act. The journalist's article is not commercial advertising, commercial promotion, or commercial speech. Rather, it is speech that is traditionally granted full protection under the First Amendment."). *See also Croton Watch Co., Inc. v. National Jeweler Magazine, Inc., et al.*, 2006 U.S. Dist. LEXIS 55753, *5 (S.D.N.Y. Aug. 7, 2006, J. Daniels) ("A plaintiff cannot adequately plead a violation of the Lanham Act by simply alleging that defendants caused a journalist to write the article.").

INVESCO has not challenged the direct quotes in that article attributed to DeAM's Kevin Parker and INVESCO's suggestion that DeAM is responsible for statements by that publication because Mr. Parker is quoted elsewhere in the article lacks any basis in logic or law. The statements by *Pensions and Investments* that INVESCO complains about are not literally false at any rate: DeAM has already hired Johnson, Bowling and Guenther, even though they may not yet be contractually free to begin work for DeAM, they are contractually committed to DeAM going forward; and DeAM is now opening an office in Louisville as it has at least a dozen employees now working in Louisville who are temporarily occupying hotel space until a leased office becomes available. The Court need not make any determination about literal falsity of the *Pensions and Investments* article, however, because the statements INVESCO challenges from the article are statements by the publisher and not by DeAM.[4]

The letter sent by former INVESCO employee Andy Kiehl, dated March 30 (annexed to INVESCO's new complaint as Exhibit I), provides no grounds for complaint whatsoever. In his letter, Mr. Kiehl could not have been any more clear or careful; he plainly stated that the the transferring employees were in two groups, those including himself who "have joined" DeAM, and Messrs. Bowling, Dowding, Guenther and Johnson, who "will be joining." This was as clear and true (and not misleading) as could be, and adding this to the complaint does not salvage INVESCO's dismissible Lanham Act claim.

4. The two cases that INVESCO cites (at 13-15) in support of its

---

[4] It is ironic, if not telling, that INVESCO attempts (at 15, n.3) to dismiss DeAM's reliance on *Gmurzynska v. Hutton*, 257 F. Supp.2d 621 (S.D.N.Y. 2003, aff'd 355 F.3d 206 (2d Cir. 2004)), on the basis that "[t]he plaintiff in *Gmurnyska* did not allege that the defendant made any actual false statements, only that the defendant was supposedly behind the statements made by certain other defendants," because that is precisely what INVESCO is alleging with respect to the *Pensions and Investments* article – namely, that DeAM "spoon-fed" that publication and is therefore somehow responsible for that publication's editorial content.

literal falsity argument do not apply on the facts here. In *Riggs Inv. Mgmt. Corp. v. Columbia Inv. Partners*, 966 F. Supp. 1250, 1267-68 (D.D.C. 1997) and *Minnesota Life Ins. Co. v. AXA Inv. MGR.*, Civ. 03-4383, 2005 WL 1475336, at *1-2 (D.MN. June 22, 2005), the courts held that Lanham Act liability did or could exist respectively because the new employers made public statements utilizing track record data belonging to the prior employers of the employees who had transferred employment. The courts found that these uses of other firms' track record data constituted or could constitute a false designation of origin sufficient to establish liability under the Lanham Act. These cases have nothing to do with the INVESCO/DeAM matter at hand, however, because DeAM has not in any manner cited or utilized INVESCO track record data in connection with its public statements regarding the employees who have or will be joining DeAM from INVESCO, and INVESCO has not accused DeAM of having done so.

"A track record is the official performance of a fund over a period of years." *Minnesota Life*, 2005 WL 1475336 at *3. It is well-established as a matter of law that track record data is critically important, proprietary data in the investment management business; indeed, the portability of track record data is regulated by Federal statute, 15 U.S.C. § 80b-6(4), and by industry self-regulatory guidelines, Association for Investment Management and Research – PPS Standard 5.A.4. *See Minnesota Life*, 2005 WL 1475336 at *17.]. The *Riggs* and *Minnesota Life* cases on which INVESCO relies regarding the misuse of another firm's track record data simply have no bearing on the press releases issued by DeAM that are the subject of this lawsuit. INVESCO's reliance on these cases is completely divorced from the issues before this Court; those decisions have nothing to do with this situation, they are completely inapposite, and they provide

this Court with no basis whatsoever for finding that INVESCO has stated a colorable Lanham Act claim (which it has not).

For example, in the *Riggs* case the court found that "[p]erhaps RIMCO's most important asset is its track record, and this case is largely about who is responsible for that track record." 966 F. Supp. at 1272. The court found, after trial, that "Columbia Partners played fast and loose with the law," *id.* at 1271, because "[o]n numerous occasions it assumed RIMCO's equity performance record as its own without properly indicating how it was achieved, intending to give the impression that there was no difference between Columbia Partners as it was constituted in the last quarter of 1995 and RIMCO's equity team from 1990 until then." *Id.* at 1267. There are no similar allegations at issue here. Accordingly, the *Riggs* case, like the *Minnesota Life* case, has nothing to do with the issues in dispute here, and INVESCO has not offered this Court any other authority in support of its literal falsity argument.

For each of these four reasons, INVESCO has failed to state a claim that any of DeAM's statements contain any literal falsity.

## POINT II

### INVESCO'S CLAIM THAT DEAM'S PRESS RELEASES WERE MATERIALLY MISLEADING IS NOT ACTIONABLE UNDER THE LANHAM ACT

There was nothing misleading about DeAM's press releases stating that the investment managers who gave notice to INVESCO "will join" DeAM. None of INVESCO's arguments in support of its contention that the press releases were materially misleading provides a basis for stating a Lanham Act claim as a matter of law.

INVESCO attacks DeAM's press releases (at 17-18) as containing "deliberate ambiguity," but the ambiguity about when the investment managers will join DeAM comes not from the manner in which DeAM phrased its press releases but from the actual employment situation of the employees at issue which is embroiled in litigation over the enforceability and duration of their contractual commitments to INVESCO. The press releases were not misleading simply because DeAM did not report as fact INVESCO's position on the contractual dispute, yet that is effectively INVESCO's position when it argues (at 18) that "Deutsche could have easily avoided what is, at best, a deliberate ambiguity with the inclusion of just a few words, e.g., "in one year's time." DeAM does not have to capitulate to INVESCO's hotly-contested position on the contractual dispute to avoid a claim under the Lanham Act, and for INVESCO to claim so is contrary to law, for it is clearly established that the Lanham Act does not "transform a contractual dispute between parties into a federal cause of action ... where a party expresses an opinion about a contractual right." *Global Disc. Travel Serv. v. Trans World Airlines, Inc.*, 960 F. Supp. 701, 707 (S.D.N.Y. 1997) (cited in moving brief at 10-11).

INVESCO presses its argument to the point of absurdity when it contends (at 9) that deposition testimony by DeAM's Kevin Parker "has revealed further support for INVESCO's Lanham Act claim." INVESCO actually contends that Mr. Parker committed a Lanham Act violation when he denied to inquiring customers who had seen press reports that DeAM had committed a "raid" on INVESCO. INVESCO is so committed to its rhetoric in this case that it contends any statement by DeAM that does not echo INVESCO's claims that DeAM hatched an "unlawful scheme" to "raid" and

10

"lift out" a team of key employees violates the Lanham Act. Surely, the Lanham Act does not afford a cause of action for denying the over-heated rhetoric and claims of a litigation adversary.

INVESCO's attempt (at 20) to rebut the *Global Discount Travel Services* case reveals the fallacy in its argument because INVESCO actually contends (at 20) that "determination of falsity does not turn on any party's interpretation of [the] contract," ignoring that the senior investment managers are seeking a declaratory judgment voiding the contractual notice period, that they have declared INVESCO to be in breach which vitiates the notice period, that Judge Russell in the Kentucky action has ruled that the notice periods will be void if INVESCO does not remedy its breaches of the agreements by reinstating the senior managers to their positions by May 21st (*see* Johnson Decl., Exh. 2), and that there is a preliminary injunction hearing scheduled to deal with all issues on June 7th. Yet INVESCO has the temerity to argue that the press releases were misleading because they did not report as fact that the investment managers will serve another year at INVESCO. That argument flies in the face of reality. When the investment managers "will join" DeAM could not be subject to any greater legal ambiguity and dispute, and INVESCO cannot state a claim under the Lanham Act by asserting that DeAM should have issued a press release according to INVESCO's wishes and disregarding the existing of this rather hotly-contested legal dispute.

INVESCO does not help itself when it turns to case law authorities in an attempt to buttress its failing position. The case on which INVESCO relies, *Johnson & Johnson-Merck Consumer Pharms Co. v. Procter & Gamble Co.*, 285 F. Supp.2d 389 (S.D.N.Y. 2003), *aff'd*, 90 Fed. Appx. 8 (2d Cir. 2003), was a literal falsity case in which

Judge Sprizzo held that the statement at issue was a literally false half-truth because P&G claimed "One pill. 24 Hours. Zero Heartburn" when, in fact, it took five hours for the drug product to eradicate heartburn. DeAM here included in its press release that which P&G did not in the cited case; namely, a statement regarding what will occur in the future without contending, falsely, that it would occur right away. The fact that DeAM here accurately reported that the investment managers "will join" DeAM does not make its press releases misleading. To the contrary, the statement that they "will join" rendered the press releases true and *not* misleading.

Finally, INVESCO's attempt (at 18-19) to rebut *Truck Components, Inc. v. K-H Corp.*, 776 F. Supp. 405 (N.D. IL. 1991) is totally unavailing.[5] The court in *Truck Components* held that the Lanham Act could not be invoked in contractual covenant not to compete cases when one party omits discussion of the other party's attempt to enforce a contract restriction from its trade releases. The *Truck Components* court could not have been any more clear on this point:

> The Lanham Act is limited to misrepresentations about a product or service. This case is essentially a breach of contract case. This Court is unwilling to expand the bounds of the Lanham Act, and thus federal jurisdiction, to every breach of a covenant not to compete.

776 F. Supp. at 410-11.

INVESCO's attempt to avoid the clear and controlling holding of *Truck Components* by arguing, without any support, that the asset management business should be treated

---

[5] INVESCO did not allege that the alleged misrepresentations go to the "characteristic, capabilities and qualities" of the services offered by DeAM and INVESCO until after DeAM noted that pleading failure in its moving brief. INVESCO has only added that required element in its supplemental complaint.

differently is totally illogical. The issue here is precisely the issue the court addressed in *Truck Components*; namely, whether the omission of information regarding a restrictive covenant rendered a trade release misleading. The fact that there the product was truck parts and here it is asset management services makes no difference, for the governing legal principle is that the Lanham Act does not impose liability for omissions when the omitted information is the existence of a disputed contractual provision.

Thus, none of INVESCO's arguments that DeAM's press releases were materially misleading provides a basis, as a matter of law, for holding DeAM liable under the Lanham Act. Accordingly, the Lanham Act claim (Count Five) must now be dismissed.

### POINT III

### NO CONTINUING BASIS FOR SUPPLEMENTAL JURISDICTION EXISTS ONCE THE LANHAM ACT CLAIM IS DISMISSED

Under 28 U.S.C. § 1367(c), this Court may decline to exercise jurisdiction over the four state law claims in its complaint if the Court finds that any of the following applies:

> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if— (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. §1367(c).

As DeAM discussed in its moving brief, if Count Five, the Lanham Act claim, is dismissed, INVESCO's state law claims (Counts One through Four) should also be dismissed under Section 1367(c)(3). The state law claims, sounding in unfair competition and DeAM's acts taken to interview and hire employees previously

employed by INVESCO, are not "such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding"; indeed, when INVESCO filed this action against DeAM on March 29, it was already a party to two consolidated proceedings in the Western District of Kentucky, suggesting that INVESCO did not expect that it would try all of its claims in one judicial proceeding. *See Kidder, Peabody & Co., Inc. v. Maxus Energy Corp.*, 925 F.2d 556, 563 (2d Cir. 1991) (court may exercise pendent jurisdiction over state law claims even if federal claim is dismissed, if it appears that a plaintiff "would ordinarily be expected to try them all in one judicial proceeding.") The "values of judicial economy, convenience, fairness, and comity" weigh in favor of this Court declining to exercise jurisdiction over the state law claims. *Id.* This Court has yet to invest any considerable time in addressing the state law claims and Supreme Court New York County, where this action was originally filed, is equally convenient for the parties.

Moreover, as this Court has noted, Counts One through Four should also be dismissed under Section 1367(c)(2) whether or not Count Five survives its motion to dismiss because the state law claims predominate over the Lanham Act claim. Retaining jurisdiction over Counts One through Four would "allow[] the federal tail to wag . . . [the] state dog," a practice disfavored by the Southern District of New York. *OccuNomix Int'l LLC v. North Ocean Ventures, Inc.*, No. 03 Civ. 6047, 2003 WL 22240660, at *1 (J. Lynch) (S.D.N.Y., Sep. 30, 2003) (dismissing state law claims without prejudice under §1367(c)(2); citing *Luongo v. Nationwide Mutual Ins. Co.*, No. 95 Civ. 3190(MBM), 1996 WL 445365 (S.D.N.Y. Aug.7, 1996)). In *OccuNomix*, Judge Lynch dismissed the state law claims without prejudice because the sole federal claim was "only tangentially related to the real subject of this dispute." *Id.* The state law

claims were various business torts centered around a complex corporate transaction, where the federal claim concerned e-mails that may have been deleted after the transaction had closed. Like INVESCO, the plaintiff had initially filed in state court, withdrawn the state court action, and then added a tenuous federal claim. In this case, INVESCO's state law claims against DeAM all arise from events that occurred long before the press releases challenged by INVESCO in its Lanham Act claim, and turn on the interpretation and enforcement of INVESCO's employment contracts with its former employees.

Indeed, all of the cases cited by INVESCO compel the same result. In *Luongo*, Judge Mukasey retained jurisdiction over numerous state claims in an employment discrimination action because they depended on the application of federal law. *Luongo*, 1996 WL 445365, at *5. Here, there is no indication that any federal law might apply to the resolution of INVESCO's state law claims. Plaintiffs' attempt to use *United States Fire Ins. Co. v. United Limousine Serv., Inc.*, 328 F. Supp.2d 450 (S.D.N.Y. 2004) to suggest to this Court that it is in any way required to hear supplemental claims, is disingenuous and a plain misreading of Judge McMahon's opinion and Section 1367. In *United States Fire Insurance*, two defendants – out of 23 in the action – no longer faced civil RICO claims and moved for dismissal of the state law claims against them. The other 21 defendants in the broad-ranging insurance fraud action still faced federal RICO claims and had not sought dismissal of the state law unjust enrichment claims against them. Because the unjust enrichment claims against two of 23 defendants did not substantially predominate over the remaining federal claims against the non-moving defendants, Judge McMahon found that the lack of any exception under

15

Section 1367(c) required her to retain jurisdiction over the state law claims against the two defendants. *Id.* at 453-54.

Under *Dunlop v. City of New York*, No. 06 Civ. 433, 2006 WL 2853972 (J. Karas) (S.D.N.Y., Oct. 4, 2006), there can be little dispute that INVESCO's state law claims substantially predominate over the federal claim. In this district, "state law claims predominate when the federal law claims are merely peripheral or cover a much narrower issue than the state law claims, or where the factual or legal analysis of the claims are unrelated." *Id.* at *5 (citing cases). As this Court noted, INVESCO's Lanham Act claim is "a digression and a waste of time and money and effort," (Tr. of May 4, 2007 at 15:8, annexed to Siegal Decl. at Exh. 3); the "real question that drives the parties is what are their rights respectively with regard to the four people who were either persuaded or themselves chose to leave INVESCO and join Deutsche Investment," (*Id.* at 13:25-14:3), all state law issues. The Lanham Act claim, if actionable, depends on INVESCO proving that DeAM's press releases – issued after INVESCO's investment managers gave notice – were materially misleading and whether INVESCO suffered any damages as a result of those press releases. To compare, INVESCO's state claims against DeAM depend solely on DeAM's actions before the investment managers resigned. Communications between DeAM and INVESCO's investment managers before they resigned are simply irrelevant to whether DeAM was legally required to affirmatively state any opinion about the scope of Messrs. Bowling, Guenther and Johnson's employment agreements with INVESCO when it announced the expansion of its fixed asset management team. Despite INVESCO's conclusory allegations to the contrary, DeAM's publicity campaign bears no relevance to the ultimate proof of whether the press

releases were materially misleading to INVESCO's clients, whether they in fact misled anyone, and whether DeAM should be legally liable for failing to comment on INVESCO's contractual duties and its dispute with its current and former employees in its press releases. As with *OccuNomix*, retaining federal jurisdiction ver Counts One through Four here would allow the federal tail of the Lanham Act to wag the state dog. INVESCO may bring its state law claims in New York or Kentucky court, and this Court need not retain supplemental jurisdiction over the state law claims.

For these reasons, the Court should decline jurisdiction over the remaining state law claims, and dismiss the complaint in its entirety.

## CONCLUSION

For all of these reasons, plaintiff's complaint should be dismissed in its entirety.

Dated: May 14, 2007

BAKER & HOSTETLER LLP

By: _____
John Siegal (JS-1036)
Ona T. Wang (OW-5462)
Essence Liburd (admission pending)

666 Fifth Avenue
New York, New York 10103
(212) 589-4200
(212) 589-4201 (fax)

*Attorneys for defendant Deutsche Investment Management Americas Inc.*